U.S DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

MAY - 7 2025

FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | INFORMATION NO. CR125-027 |
| | ) | |
| v. | ) | 18 U.S.C. §§ 1343, 1349 |
| | ) | Wire Fraud Conspiracy |
| ALLEN BROWN | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

THE UNITED STATES ATTORNEY CHARGES THAT:

## INTRODUCTION

At all times relevant to this Information:

1. The defendant ALLEN BROWN ("BROWN") was a resident of Augusta, Georgia, in the Southern District of Georgia. In 2022 and 2023, BROWN and an individual identified herein as "Ghost" Preparer-1 operated Business A, a "ghost" tax preparation business ("Business A") in Augusta, Georgia. In 2022, BROWN operated Business A at his residence and at a church. In 2023, BROWN operated Business A at 1850 Gordon Highway, Suite C, Augusta, Georgia. BROWN charged Business A clients a fee of approximately $500 and ten percent of any fraudulent tax refund he and his other "ghost" preparers at Business A obtained for them. "Ghost" preparers fabricate income in order to qualify their clients for tax credits, claim fake deductions to boost the size of the refund, and base their fees on a percentage of the fraudulent tax refund claimed on their client's tax return.

2. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering federal tax laws, including refundable tax credits, of the United States and collecting taxes owed to the United States.

3. Any individual who prepared and assisted in preparing federal tax returns for a fee was required to obtain a preparer tax identification number ("PTIN") from the IRS. A paid tax preparer was required to place his PTIN on each tax return he/she prepared for a fee to identify the preparer of that tax return.

4. "Ghost" preparers are paid tax return preparers who attempt to conceal their involvement in the tax preparation process by not signing the tax returns on the "Paid Preparer" line or including their PTIN on the tax returns. Instead, they remain invisible to the IRS. A tax return that is not signed by the preparer and does not have a PTIN included represents to the IRS that the tax returns are self-prepared by the individual taxpayers.

5. A U.S. Individual Income Tax Return, Form 1040 ("Form 1040), was an IRS form used by U.S. taxpayers to file an annual income tax return.

6. A Schedule A, Itemized Deductions ("Schedule A"), was an IRS form attached to a Form 1040, when applicable, used to claim certain itemized deductions from taxable income

7. Schedule C, Profit or Loss from Business (Sole Proprietorship) ("Schedule C"), was an IRS form that was attached to a Form 1040, when applicable, and was used by taxpayers to report gross receipts, expenses, and profit

or loss from a business operated by the taxpayer as a sole proprietorship. The net figure reported on a Schedule C, whether profit or loss, was a component of the taxpayer's adjusted gross income and was reported on Form 1040.

8. A Fuel Tax Credit ("FTC") was a refundable tax credit thereby allowing a taxpayer to receive an additional refund. To claim the FTC, a taxpayer must have a nontaxable use of fuel. Nontaxable uses of fuel include: the use of fuel on a farm for farming purposes; off-highway business use; boats engaged in commercial fishing; and use by school buses. In order to claim the FTC, the taxpayer or return preparer must complete IRS Form 4136, *Credit for Federal Tax Paid on Fuels* (Form 4136"), which is used to compute the amount of the credit that the taxpayer is eligible to claim. This worksheet includes the nontaxable usage of gasoline and the gallons of nontaxable fuel used. All of this information is found on Form 4136 which is included with the tax return when it is filed with the IRS.

9. Beginning in or about November 2022, and continuing through in or about May 2023, an individual identified herein as "Ghost Preparer-2" worked at Business A as a "ghost" preparer. Ghost Preparer-2 was trained by BROWN and another individual to prepare and electronically file materially false income tax returns for Business A's clients.

10. Beginning in or about February 2023 and continuing through in or about May 2023, an individual identified herein as "Ghost Preparer-3" prepared materially false income tax returns for Business A's clients.

11. BROWN and another individual not named herein trained Business A's employees to "ghost" prepare false tax returns that claimed bogus FTCs, medical and dental expenses, and other false items.

## GENERAL ALLEGATIONS

### The Scheme and Artifice to Defraud

12. Beginning in or about February 2022, and continuing through in or about May 2023, in the Southern District of Georgia and elsewhere, the Defendant BROWN, along with Ghost Preparer-1, Ghost Preparer-2, Ghost Preparer-3 and other individuals not named herein, did knowingly and willfully engage in a scheme and artifice to defraud the IRS and to obtain money and property from the IRS by means of materially false and fraudulent pretenses, representations and promises.

13. The object of the scheme and artifice to defraud was for BROWN, along with Ghost Preparer-1, Ghost Preparer-2, and Ghost Preparer-3, and others not named herein, to enrich themselves by defrauding the IRS through filing false claims for income tax refunds and collecting a percentage of the refunds obtained.

### Manner and Means

14. The manner and means utilized by BROWN, Ghost Preparer-1, Ghost Preparer-2, Ghost Preparer-3, and others not named herein, to accomplish the scheme and artifice to defraud included the following:

15. BROWN and other "ghost" preparers he hired at Business A would and did offer clients two filing options, the "Standard" or the "I'm Not Scared" option.

The "Standard" option generally resulted in a fraudulent tax refund of $2,000 - $9,000. The "I'm Not Scared" option generally resulted in a fraudulent tax refund of $14,000 - $30,000. For the "I'm Not Scared" option, BROWN and another individual not named herein instructed "ghost" preparers at Business A to falsely claim FTCs and falsely report gross income and other expenses on Schedule C and medical and dental expenses on Schedule A filed with the tax returns. For the "Standard" option, "ghost" preparers were instructed to falsely claim Sick and Family Leave Credits and falsely report income and other expenses on Schedule C filed with the returns. Both options resulted in substantial income tax refunds Business A's clients were not entitled to receive.

16. In furtherance of the scheme and artifice to defraud, BROWN would instruct the "ghost" preparers he hired not to include their identity or PTIN on the "Paid Preparer Use Only" line of the returns they prepared, thereby creating the false and misleading impression that the returns were self-prepared by the client.

17. In furtherance of the scheme and artifice to defraud, BROWN and his "ghost" preparer conspirators would and did not review the tax returns they "ghost" prepared for clients and would not give the client a copy of the return filed with the IRS.

18. In furtherance of the scheme and artifice to defraud, BROWN and his "ghost" preparer conspirators would and did notify potential clients in a "Frequently Asked Questions" document that BROWN: "no longer processes tax returns. He has hired a whole team he trained thoroughly to do exactly what he would do."

19. On or about March 3, 2023, BROWN sent to Ghost Preparer-2 and others a text message about an individual who prepared false income tax returns. BROWN's text message stated, "Dangggggg he needs to be with the team. Ole School ain't never scared."

20. On or about March 19, 2023, Ghost Preparer-2 sent a text message to BROWN and other "ghost" preparers at Business A stating, "So the receipts that [Ghost Preparer-3] sent plus ones I created all day today equal so far to 142,000 gallons so a little more than halfway there because some returns we did over 200,000 gallons."

21. On or about April 26, 2023, BROWN sent a text message to other "ghost" preparers at Business A instructing, "Make a note on the refund forms if they send [Financial Institution] please don't say this is for business or taxes tell them to say gift or something."

22. On or about September 14, 2023, BROWN sent a text message to Ghost Preparer-2 and several other "ghost" preparers at Business A:

> So the way the process works because I like to ask everyone this one question first. Who is supposed to be getting 15, 20, 30, 40 or more thousands of dollars from the IRS in the first place. So when a refund comes across their system for those amounts and especially when it's not showing on their records the extra stuff then yes they have the right to review, verify, and or audit tax returns to ensure that the taxpayers are being truthful. And these things happen in the IRS timeframe not yours or ours. However, if they need additional information they will always reach out by letter in the mail to you guys not us. So you will know something before we do.

23. Between in or about February 2022 and in or about May 2023, BROWN and several "ghost" preparer conspirators at Business A, in exchange for a percentage of the refunds or other fees, prepared, caused to be prepared and filed

6

with the IRS sixty-three (63) false and fraudulent Forms 1040 for clients that resulted in the improper reduction of his clients' tax liabilities and inflated refunds. None of the returns contained a PTIN or identified the paid preparer on the "Paid Preparer Use Only" line. All the returns were electronically transmitted from the Southern District of Georgia to an IRS processing center in Kansas City, Missouri.

24. In furtherance of the scheme and artifice to defraud, BROWN and his conspirators caused the United States Department of Treasury to electronically transmit via interstate wire approximately $1,003,631 in fraudulent income tax refunds (based on fraudulently-claimed FTCs, Sick and Family Leave Credits, education expenses, medical and dental expenses, and other false items) to clients' bank accounts.

25. In furtherance of the scheme and artifice to defraud, BROWN and his conspirators charged clients fees for preparing and filing fraudulent Forms 1040 with the IRS and required clients to send via electronic transmission approximately $130,000 in fees to one or more bank accounts controlled by BROWN.

## COUNT ONE
*Conspiracy to Commit Wire Fraud*
### 18 U.S.C. §§ 1343, 1349

26. Paragraphs 1 through 25 of the Information are realleged and incorporated as though fully set forth herein.

27. Beginning on or about February 2022, and continuing through on or about May 2023, in the Southern District of Georgia and elsewhere, the defendant

**ALLEN BROWN,**

and Ghost Preparer-1, Ghost Preparer-2, Ghost Preparer-3, and others not named herein did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree together and with others known and unknown to the United States Attorney, to knowingly, and with intent to defraud, devise and intend to devise a material scheme and artifice to defraud the IRS and to obtain money and property from the IRS by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises, were false and fraudulent when made, and did knowingly transmit and cause to be transmitted in interstate commerce by means of wire communication, certain writings, sign, signals, pictures and sounds, for the purpose of executing the scheme and artifice.

All in violation of Title 18, United States Code, Sections 1343, 1349

## FORFEITURE ALLEGATION

The allegations contained in Count One of this Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

Upon conviction of the offense in violation of Title 18, United States Code, Sections 1343, 139 set forth in Count One of this Information, Defendant BROWN shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of

such violation, including but not limited to a money judgment in the amount of $130,000.00.

If any of the property described above, as a result of any act or commission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

_/s/ Matthew Josephson_  
Matthew A. Josephson  
Assistant United States Attorney  
Deputy Chief, Criminal Division

_/s/ George J.C. Jacobs_  
George J.C. Jacobs, III  
Assistant United States Attorney  
*Lead Counsel