UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR: |
| | ) | CR125-027 |
| ALLEN BROWN | ) | |
| | ) | |

PLEA AGREEMENT

Defendant Allen Brown, represented by Defendant's counsel Randolph Frails and Katrell Nash, and the United States of America, represented by Assistant United States Attorney George J.C. Jacobs, III, have reached a plea agreement, in this case. The terms and conditions of that agreement are as follows.

1.    Guilty Plea

Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to Count One of the Information, which charges a violation of 18 U.S.C. §§ 1343, 1349.

2.    Elements and Factual Basis

The elements necessary to prove the offense charged in Count One are (1) that the Defendant, together with one or more other persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in the Information; and (2) the Defendant knew the unlawful purpose of the plan and willfully joined in it.

Defendant agrees that the Defendant is, in fact, guilty of this offense. The Defendant agrees to the accuracy of the following facts, which satisfy each of the offense's required elements:

The defendant ALLEN BROWN ("BROWN") was a resident of Augusta, Georgia, in the Southern District of Georgia. In 2022 and 2023, BROWN and an individual identified herein as "Ghost" Preparer-1 operated Business A, a "ghost" tax preparation business ("Business A") in Augusta, Georgia. In 2022, BROWN operated Business A at his residence and at a church. In 2023, BROWN operated Business A at 1850 Gordon Highway, Suite C, Augusta, Georgia. BROWN charged Business A clients a fee of approximately $500 and ten percent of any fraudulent tax refund he and his other "ghost" preparers at Business A obtained for them. "Ghost" preparers fabricate income in order to qualify their clients for tax credits, claim fake deductions to boost the size of the refund, and base their fees on a percentage of the fraudulent tax refund claimed on their client's tax return.

The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering federal tax laws, including refundable tax credits, of the United States and collecting taxes owed to the United States.

Any individual who prepared and assisted in preparing federal tax returns for a fee was required to obtain a preparer tax identification number ("PTIN") from the IRS. A paid tax preparer was required to place his PTIN on each tax return he/she prepared for a fee to identify the preparer of that tax return.

2

A U.S. Individual Income Tax Return, Form 1040 ("Form 1040), was an IRS form used by U.S. taxpayers to file an annual income tax return. A Schedule A, Itemized Deductions ("Schedule A"), was an IRS form attached to a Form 1040, when applicable, used to claim certain itemized deductions from taxable income. Schedule C, Profit or Loss from Business (Sole Proprietorship) ("Schedule C"), was an IRS form that was attached to a Form 1040, when applicable, and was used by taxpayers to report gross receipts, expenses, and profit or loss from a business operated by the taxpayer as a sole proprietorship. The net figure reported on a Schedule C, whether profit or loss, was a component of the taxpayer's adjusted gross income and was reported on Form 1040.

A Fuel Tax Credit ("FTC") was a refundable tax credit thereby allowing a taxpayer to receive an additional refund. To claim the FTC, a taxpayer must have a nontaxable use of fuel. Nontaxable uses of fuel include: the use of fuel on a farm for farming purposes; off-highway business use; boats engaged in commercial fishing; and use by school buses. In order to claim the FTC, the taxpayer or return preparer must complete IRS Form 4136, *Credit for Federal Tax Paid on Fuels* (Form 4136"), which is used to compute the amount of the credit that the taxpayer is eligible to claim. This worksheet includes the nontaxable usage of gasoline and the gallons of nontaxable fuel used. All of this information is found on Form 4136 which is included with the tax return when it is filed with the IRS.

Beginning in or about November 2022, and continuing through in or about December 2023, an individual identified herein as "Ghost Preparer-2" worked at

3

Business A as a "ghost" preparer.  Ghost Preparer-2 was trained by BROWN and another individual to prepare and electronically file materially false income tax returns for Business A's clients.  Beginning in or about February 2023 and continuing through in or about May 2023, an individual identified herein as "Ghost Preparer-3" prepared materially false income tax returns for Business A's clients. BROWN and another individual not named herein trained Business A's employees to "ghost" prepare false tax returns that claimed bogus FTCs, medical and dental expenses, and other false items.

Beginning in or about February 2022, and continuing through in or about May 2023, in the Southern District of Georgia and elsewhere, the Defendant BROWN, Ghost Preparer-1, Ghost Preparer-2, Ghost Preparer-3 and other individuals not named herein, did knowingly and willfully engage in a scheme to defraud the IRS and to obtain money and property from the IRS by means of materially false and fraudulent pretenses, representations and promises.  The object of the scheme and artifice to defraud was for BROWN, Ghost Preparer-1, Ghost Preparer-2, Ghost Preparer-3, and other individuals not named herein to enrich themselves by defrauding the IRS through filing false claims for income tax refunds and collecting a percentage of the refunds obtained.

In furtherance of the scheme and artifice to defraud, BROWN and other "ghost" preparers he hired at Business A would and did offer clients two filing options, the "Standard" or the "I'm Not Scared" option.  The "Standard" option generally resulted in a fraudulent tax refund of $2,000 - $9,000.  The "I'm Not

4

Scared" option generally resulted in a fraudulent tax refund of $14,000 - $30,000. For the "I'm Not Scared" option, BROWN and another individual not named herein instructed "ghost" preparers at Business A to falsely claim FTCs and falsely report gross income and other expenses on Schedule C and medical and dental expenses on Schedule A filed with the tax returns. For the "Standard" option, "ghost" preparers were instructed to falsely claim Sick and Family Leave Credits and falsely report income and other expenses on Schedule C filed with the returns. Both options resulted in substantial income tax refunds their clients were not entitled to receive. BROWN would instruct the "ghost" preparers he hired not to include their identity or PTIN on the "Paid Preparer Use Only" line of the returns they prepared, thereby creating the false and misleading impression that the returns were self-prepared by the client.

Between in or about February 2022 and in or about May 2023, BROWN and several "ghost" preparer conspirators at Business A, in exchange for a percentage of the refunds or other fees, prepared, caused to be prepared and filed with the IRS sixty-three (63) false and fraudulent Forms 1040 for clients that resulted in the improper reduction of his clients' tax liabilities and inflated refunds. None of the returns contained a PTIN or identified the paid preparer on the "Paid Preparer Use Only" line. All the returns were electronically transmitted from the Southern District of Georgia to an IRS processing center in Kansas City, Missouri.

In furtherance of the scheme and artifice to defraud, BROWN and his conspirators caused the United States Department of Treasury to electronically

transmit via interstate wire approximately $1,003,631 in fraudulent income tax refunds (based on fraudulently-claimed FTCs, Sick and Family Leave Credits, education expenses, medical and dental expenses, and other false items) to clients' bank accounts.  BROWN and his conspirators charged clients fees for preparing and filing fraudulent Forms 1040 with the IRS and required clients to send via electronic transmission approximately $130,000 in fees to one or more bank accounts controlled by BROWN.

3.    <u>Possible Sentence</u>

Defendant's guilty plea will subject the Defendant to the following maximum possible sentence:  20 years' imprisonment, 3 years of supervised release, a fine not to exceed $250,000 or the greater of twice the pecuniary gain or twice the gross loss, and such restitution as may be ordered by the Court.  The Court additionally must impose a $100 special assessment per count of conviction.

4.    <u>No Promised Sentence</u>

No one has promised Defendant that the Court will impose any particular sentence or a sentence within any particular range.  The Court is not bound by any estimate of sentence given or recommendations made by Defendant's counsel, the government, the U.S. Probation Office, or anyone else.  The Court may impose a sentence up to the statutory maximum. Defendant will not be allowed to withdraw Defendant's plea of guilty if the Defendant receives a more severe sentence than the Defendant expects.

5.    <u>Court's Use of Sentencing Guidelines</u>

The Court is obligated to use the United States Sentencing Guidelines to calculate the applicable guideline range for Defendant's offense. The Sentencing Guidelines are advisory; the Court is not required to impose a sentence within the range those Guidelines suggest. The Court will consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), in determining the Defendant's sentence. The Sentencing Guidelines are based on <u>all</u> of Defendant's relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the conduct underlying the particular Count or Counts to which Defendant is pleading guilty.

6.    <u>Agreements Regarding Sentencing Guidelines</u>

a.    <u>Use of Information</u>

Nothing in this agreement precludes the government from providing full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range. Any incriminating information provided by the Defendant during the Defendant's cooperation will not be used in determining the applicable Guidelines range, pursuant to Section 1B1.8 of the Sentencing Guidelines.

b.    <u>Acceptance of Responsibility</u>

If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the government will move for an additional one-level reduction in offense

level pursuant to Section 3E1.1(b) based on Defendant's timely notification of the Defendant's intention to enter a guilty plea.

    c.    Amount of Loss

The government and Defendant agree to recommend to the U.S. Probation Office and the Court at sentencing that the amount of loss, for purposes of Section 2TB1.1 of the Sentencing Guidelines, is not more than $1,500,000.

    d.    Low End of Guidelines Range

The government will recommend that Defendant be sentenced to the low end of the advisory Guidelines range determined by the Court at sentencing.

7.    Consent Injunction

Defendant agrees, as part of this plea agreement, to be permanently enjoined under IRC §§ 7402 and 7407, from preparing or filing federal tax returns for anyone other than himself. Defendant understands that the United States will file a civil complaint against him seeking this relief, and Defendant agrees to consent to a permanent injunction to the aforementioned effect.

8.    Financial Obligations and Agreements

    a.    Restitution

The amount of restitution ordered by the Court shall include restitution for the full loss caused by Defendant's total criminal conduct. Restitution is not limited to the specific counts to which Defendant is pleading guilty. Any restitution judgment is intended to and will survive Defendant, notwithstanding the abatement of any underlying criminal conviction.

The Defendant agrees to pay restitution to the Internal Revenue Service in the principal amount of $1,003,631, jointly and severally with others, if ordered by the Court, pursuant to Title 18, United States Code, Section 3663(a), and agrees that the total amount of restitution reflected in this agreement results from the Defendant's fraudulent conduct.

The Defendant agrees that, unless the Director of the Administrative Office of the United States Courts directs her otherwise, all payments made pursuant to the District Court's restitution order, the Defendant will provide the following information: (1) Defendant's name and Social Security Number; (2) The District Court Docket Number assigned to this case; and (3) a Statement that the payment is being submitted pursuant to the District Court's restitution order.

The Defendant agrees to include a request that the Clerk of the Court send the information, along with the Defendant's payments, to the IRS at the following address: **IRS-RACS, Attention: Mail Stop 6261, Restitution, 333 W. Pershing Avenue, Kansas City, MO 64108**. The defendant also agrees to send a notice of any payments made pursuant to this agreement, including the information listed in the previous paragraph, to the IRS at this address.

    b.    <u>Special Assessment</u>

Defendant agrees to pay a special assessment in the amount of $100, payable to the Clerk of the United States District Court, which shall be due immediately at the time of sentencing.

    c.    <u>Required Financial Disclosures</u>

By the date that Defendant enters a guilty plea, Defendant shall complete a financial disclosure form listing all Defendant's assets and financial interests, whether held directly or indirectly, solely or jointly, in Defendant's name or in the name of another. Defendant shall sign the financial disclosure form under penalty of perjury and provide that form to the Financial Litigation Unit of the United States Attorney's Office and to the United States Probation Office. Defendant authorizes the United States to obtain credit reports on Defendant and to share the contents of those reports with the Court and the United States Probation Office. Defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the United States Probation Office.

      d.    <u>Financial Examination</u>

Defendant will submit to an examination under oath on the issue of Defendant's financial disclosures and assets if deemed necessary by the United States. Such examination will occur not later than 30 days after the entry of Defendant's guilty plea.

      e.    <u>No Transfer of Assets</u>

Defendant certifies that Defendant has made no transfer of assets in contemplations of this prosecution for the purpose of evading or defeating financial obligations created by this Agreement or that may be imposed upon Defendant by the Court at sentencing. Defendant promises that Defendant will make no such transfers in the future.

      f.    <u>Material Change in Circumstances</u>

10

Defendant agrees to notify the United States of any material change in circumstances, as described in 18 U.S.C. § 3664(k), that occurs prior to sentencing in this case. Such notification will be made within seven days of the event giving rise to the changed circumstances, and in no event later than the date of sentencing.

g.    Enforcement

Any payment schedule imposed by the Court is without prejudice to the United States to take all actions and remedies available to it to collect the full amount of the financial obligations imposed by the judgment of the Court in this case. Defendant understands and agrees that the financial obligations imposed by the judgment of the Court in this case will be placed on the Treasury Offset Program so that any federal payment that Defendant receives may be offset and applied to the judgment debt without regard to or affecting any payment schedule imposed by the Court.

10.    Waivers

a.    Waiver of Appeal

Defendant entirely waives Defendant's right to a direct appeal of Defendant's conviction and sentence on any ground (including any argument that the statute to which the Defendant is pleading guilty is unconstitutional or that the admitted conduct does not fall within the scope of the statute). The only exceptions are that the Defendant may file a direct appeal of Defendant's sentence if (1) the court enters a sentence above the statutory maximum, (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or

11

(3) the Government appeals the sentence.  Absent those exceptions, Defendant explicitly and irrevocably instructs Defendant's attorney not to file an appeal.

    b.    <u>Waiver of Collateral Attack</u>

Defendant entirely waives Defendant's right to collaterally attack Defendant's conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion.  The only exception is that Defendant may collaterally attack Defendant's conviction and sentence based on a claim of ineffective assistance of counsel.

    c.    <u>FOIA and Privacy Act Waiver</u>

Defendant waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any record pertaining to the investigation or prosecution of this case under the authority of the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, and all subsequent amendments thereto.

    d.    <u>Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 Waiver</u>

Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence ordinarily limit the admissibility of statements made by a Defendant during the course of plea discussions or plea proceedings.  Defendant knowingly and voluntarily waives the protections of these rules.  If Defendant fails to plead guilty, or Defendant's plea of guilty is later withdrawn, all of Defendant's statements in connection with this plea, and any leads derived therefrom, shall be admissible for any and all purposes.

11.    Forfeiture

a.    Defendant hereby agrees to the entry of an Order of Forfeiture reflecting a money judgment in the amount of $130,000,[1] said sum constituting the gross proceeds Defendant obtained as a result of the offense to which Defendant has agreed to plead guilty, as determined by the Court at sentencing.

b.    Defendant acknowledges that the government may move at any time, pursuant to Fed. R. Crim. P. 32.2(e) to forfeit as substitute assets specific property of Defendant having a value up to the amount of the money judgment entered by the Court. In the event the government exercises its right to forfeit substitute assets, the Defendant agrees to take all steps requested by the government to pass clear title to the substitute property to the government.

c.    Defendant agrees to hold the government and its agents and employees harmless from any claims made in connection with the seizure, forfeiture, or disposal of property connected to this case.   Defendant further agrees to waive the requirements of the Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d.    Defendant waives and abandons Defendant's interest in any other property that may have been seized in connection with this case.   Additionally, Defendant waives any and all challenges on any grounds to the seizure, forfeiture,

---

[1] This forfeiture amount consists of the $130,000.00 Defendant BROWN received in "ghost" tax preparation fees.

and disposal of any property seized in connection with this case. Defendant specifically agrees to waive any challenges arising under the Double Jeopardy Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment.

12.    Defendant's Rights

Defendant has the right to be represented by counsel, and if necessary have the court appoint counsel, at trial and at every other critical stage of the proceeding. Defendant possesses a number of rights which Defendant will waive by pleading guilty, including: the right to plead not guilty, or having already so pleaded, to persist in that plea; the right to a jury trial; and the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.

13.    Satisfaction with Counsel

Defendant has had the benefit of legal counsel in negotiating this agreement. Defendant believes that Defendant's attorney has represented Defendant faithfully, skillfully, and diligently, and Defendant is completely satisfied with the legal advice given and the work performed by Defendant's attorney.

14.    Breach of Plea Agreement

If Defendant fails to plead guilty, withdraws or attempts to withdraw Defendant's guilty plea, commits any new criminal conduct following the execution of this agreement, or otherwise breaches this agreement, the government is released from all of its agreements regarding Defendant's sentence, including any agreements regarding the calculation of Defendant's advisory Sentencing Guidelines. In addition,

the government may declare the plea agreement null and void, reinstate any counts that may have been dismissed pursuant to the plea agreement, and/or file new charges against Defendant that might otherwise be barred by this plea agreement. Defendant waives any statute-of-limitations or speedy trial defense to prosecutions reinstated or commenced under this paragraph.

15.    Entire Agreement

This agreement contains the entire agreement between the government and Defendant.

TARA M. LYONS
ACTING UNITED STATES ATTORNEY

5/7/25
Date

Matthew A. Josephson
Deputy Chief, Criminal Division

5/6/25
Date

George J.C. Jacobs, III
District of Columbia Bar No. 419016
Assistant United States Attorney

15

I have read and carefully reviewed this agreement with my attorney. I understand each provision of this agreement, and I voluntarily agree to it. I hereby stipulate that the factual basis set out therein is true and accurate in every respect.

May 5, 2025
Date

Allen Brown
Defendant

I have fully explained to Defendant all of Defendant's rights, and I have carefully reviewed each and every part of this agreement with Defendant. I believe that Defendant fully and completely understands it, and that Defendant's decision to enter into this agreement is an informed, intelligent, and voluntary one.

May 5, 2025
Date

Randolph Frails
Defendant's Attorney

5-5-25
Date

Katrell Nash
Defendant's Attorney

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR: |
| | ) | |
| ALLEN BROWN | ) | |
| | ) | |

## ORDER

The aforesaid Plea Agreement, having been considered by the Court in conjunction with the interrogation by the Court of the Defendant and the Defendant's attorney at a hearing on the Defendant's motion to change Defendant's plea and the Court finding that the plea of guilty is made freely, voluntarily and knowingly, it is thereupon,

ORDERED that the plea of guilty by Defendant be, and it is, hereby accepted and the foregoing Plea Agreement be, and it is, hereby ratified and confirmed.

This 22nd day of ___May___ 2025.

_____
J. RANDAL HALL
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA